## 35039. MUTUAL BENEFIT HEALTH & ACCIDENT ASSN. *v.* LeMASTER.

DECIDED MARCH 11, 1954—REHEARING DENIED MARCH 26, 1954.

872

*Anderson, Anderson, Walker & Reichert,* for plaintiff in error.
*Erwin Sibley,* contra.

NICHOLS, J. 1. There is a motion to dismiss the writ of error on grounds that the assignment of error therein made is not sufficiently definite, relates to evidence not identified by the trial judge, assigns error on the whole of a judgment consisting of findings of law and fact, and refers to other parts of the record. The following statements are made in the writ of error: "After hearing argument of counsel for both parties in said case the

court took said case under advisement and on December 1, 1953, rendered its judgment construing the agency contract between the parties in said case and declaring that plaintiff is entitled to commissions on renewal premiums paid after the termination of his agency contract under the terms and provisions of such contract and finding for the plaintiff a stated sum of money to be paid by the defendant as such commissions up to August 1, 1953, together with a commission of five percent on all renewal premiums paid after August 1, 1953.

"To such judgment and decree of the court the defendant, Mutual Benefit Health & Accident Association, then and there excepted and here and now excepts and assigns the same as error upon the ground that the same is contrary to law and to the undisputed evidence; and upon the ground that under a proper construction of said agency contract the plaintiff is not entitled to any commission on renewal premiums paid after the termination of his agency contract, all as fully set out in the answer of defendants to the plaintiff's petition, and in the amendment to said answer."

The writ of error further recites that the case was heard by a judge without a jury upon an agreed statement of facts; and that a copy of the agreed statement and of the agency contract were attached as exhibits and incorporated into the bill of exceptions. These exhibits appear before the judge's certificate, and the judge certified that the bill of exceptions "contains all of the evidence . . . material to a clear understanding of the errors complained of."

The assignment of error is upon a judgment construing an agency contract and declaring the rights of the parties as established by their contract. This was the effect of the judgment, which was written in the form of an opinion. The writ of error shows the court's construction of the contract and the construction contended for by the plaintiff in error. This is sufficient to enable this court to ascertain the only question to be decided here—namely, whether the court's construction of the contract was in accord with, or contrary to, the law as applied to the undisputed facts of the case. The reference to parts of the record specified does not vitiate the assignment of error. Code § 6-1307. There was only one question involved in the judg-

ment, and the assignment of error pointing it out is sufficient. *Patterson* v. *Beck,* 133 *Ga.* 701 (66 S. E. 911); *Anderson* v. *Ashford & Co.,* 44 *Ga. App.* 176 (1) (160 S. E. 804); *Robinson* v. *Bryson & Sons,* 45 *Ga. App.* 440 (4) (165 S. E. 158); *King* v. *Tilley,* 69 *Ga. App.* 561 (1) (26 S. E. 2d 293). The motion to dismiss the writ of error is denied.

2. The association rightly contends that the case turns upon a construction of the entire contract between the parties. *Bryant* v. *Continental Casualty Co.,* 58 *Ga. App.* 518, 527 (199 S. E. 343). By that instrument the association appointed LeMaster as its soliciting agent, with power to exercise his own judgment as to persons to be solicited and methods of soliciting; he was not to be an employee. His duties were: to procure applications for insurance and to submit them promptly to the association; to collect, receipt for, and remit cash to cover net premiums owed to the association on each application; and "to remit promptly to the association all renewal premiums collected." The contract, we note, does not require LeMaster to collect renewal premiums, nor to perform any services with respect to renewals other than to remit renewal premiums that he may have collected. The stipulation of fact recites that practically all of the renewal premiums were paid by the policyholders directly to the association.

LeMaster was allowed certain commissions as full compensation for all expenses and services under the contract. There was a commission provided on first premiums, and another as follows: "A commission of 5% on renewal premiums paid by health and accident and hospitalization policyholders sold by the second party, and located in the territory mentioned herein, while this contract is in force, provided said 5% commission shall become payable after second party has sold or has in force 25 or more policies." LeMaster sold and had in force 25 or more policies, fulfilling the last provision. The commission payable was 5% on renewal premiums paid by health, accident, and hospitalization policyholders, to whom LeMaster had sold such insurance, and who were located in Milledgeville and surrounding territory. The association contends that the phrase, "while this contract is in force," relates to "paid," so that the agent would only be entitled to commissions on renewal premiums paid

during the time that the contract was in force, but we think that this phrase qualifies the description of the policyholders, as those "sold" by LeMaster and "located" in Milledgeville during the time that the contract was in force. The position of this phrase indicates that it relates to "sold" and "located," and it is difficult to see that it could relate back to the participle, "paid," over the two other intervening participles modifying "policyholders." The association argues that this construction adds nothing to the contract; but it would be to the association's interest that no claim for commissions could be made by LeMaster upon renewal premiums paid by policyholders who moved to Milledgeville *after* LeMaster's contract was terminated, or to whom LeMaster had sold insurance under the authority of a previous contract with the association. This construction makes a provision against a claim under either of these conditions, at least.

Although the contract does not expressly provide that Le-Master is entitled to commissions on renewal premiums regardless of whether or not he continues to act as the association's soliciting agent, it does state that LeMaster shall be allowed certain commissions, on first and renewal premiums, "as full compensation for all expenses and services hereunder." The services required of LeMaster by the terms of the contract were to procure applications, to collect and remit the first premiums thereon, and to remit renewal premiums collected. Since his compensation was conditioned on the performance of all services required by the contract, and since these services pertaining to the policies sold by LeMaster were fully performed by him, the commissions on renewal premiums were payable to LeMaster whenever the renewal premiums were paid in to the association. LeMaster's right to commissions on renewals does not rest on the consideration of his services in keeping the policies in force and on the books of the association; for no such services were required of him by the contract.

This is one feature of this case which distinguishes it from *Bryant* v. *Continental Casualty Co.*, supra; there the agent was to be compensated for services beyond the procurement of policies, and such services were not performed. Another difference is that in the *Bryant* case the agent voluntarily resigned and abandoned his duties without giving the required notice; but in

this case LeMaster's services were terminated by the association, under the provision of the contract giving either party the right to cancel it upon ten days' written notice to the other party.

The plain intent of the association, as gathered from the entire contract, was to promise LeMaster that he would receive commissions on renewals of policies originally written by him for the company. And we are wholly unable to attribute to the association an intent to make an illusory promise to pay commissions on renewals, a promise dependent upon whether or not the association wished to cancel the contract.

The court did not err in declaring that LeMaster had a right to commissions upon renewal premiums received by the association after the termination of the contract.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*