## 70115. OLYMPIC DEVELOPMENT GROUP, INC. et al.
## v. AMERICAN DRUGGISTS' INSURANCE COMPANY.
### (333 SE2d 622)

CARLEY, Judge.

Appellee-surety filed a complaint against appellants-indemnitors, alleging the following: That appellee executed a surety bond with Prichard Mining Company as principal; that, in consideration thereof, appellants agreed to indemnify appellee against any and all liability appellee would incur as a result of executing the bond; that the bond was forfeited and appellee was required to pay the amount of the forfeiture; and that appellants were indebted to appellee in the amount of the unpaid premiums and principal on the bond, attorney fees and costs of litigation. On May 22, 1984, the trial court granted partial summary judgment in favor of appellee as to appellants' liability for the amount of unpaid premiums on the bond. On October 19, 1984, partial summary judgment was granted in favor of appellee as to the liability of the appellants for the principal on the bond, attorney fees and costs of litigation. Appellants filed their notice of appeal on November 19, 1984, seeking to appeal from both of the trial court's orders granting partial summary judgment in favor of appellee.

1. Appellee has filed a motion to dismiss appellants' appeal from the trial court's order dated May 22, 1984, on the ground that no notice of appeal was filed within thirty days after the issuance of that order.

The grant of partial summary judgment as to one or more but fewer than all the claims or parties is reviewable by direct appeal if the notice of appeal is filed within 30 days of the rendition of such judgment. OCGA § 9-11-56 (h); *Tri-County Feed & Seed v. Savannah Valley Prod. Credit Assn.*, 158 Ga. App. 815, 816 (1) (282 SE2d 344) (1981); *Ferguson v. United Ins. Co. of America*, 163 Ga. App. 282 (1) (293 SE2d 736) (1982). The losing party in such a situation may also appeal after rendition of *final* judgment in the case. *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242 (248 SE2d 641) (1978); *Newton v. K. B. Property Mgt. of Ga.*, 166 Ga. App. 901, 903 (306 SE2d 5) (1983); *Gulf Oil Co. v. Mantegna*, 167 Ga. App. 844, 845-846 (307 SE2d 732) (1983). However, in the instant case, appellants did not file a timely direct appeal, nor do they now appeal from a final order. The second order dated October 19, 1984, which granted partial summary judgment in favor of appellee does not constitute the final judgment in the case as it explicitly reserves determination of the issue of the liability of one of the other defendants. See *Insurance Co. of N. America v. Fowler*, 148 Ga. App. 509, 512 (3) (251 SE2d 594) (1978); OCGA § 5-6-34. Accordingly, appellants' appeal from the trial court's order of May 22, 1984 is not properly before this court. Appellee's motion to dismiss appellants' appeal from the order of May 22, 1984,

is granted.

2. Resolution of appellants' assertion that the trial court erred in granting appellee's second motion for partial summary judgment necessitates a rather lengthy summary of a complex factual situation.

Prichard Mining Company (Prichard) desired to obtain a strip-mining permit from the State of Kentucky (Kentucky). Mining permit applicants must submit a surety bond in favor of Kentucky, which bond is to ensure that the area disturbed by the mining will be restored. To this end, Prichard submitted to appellee-surety company an application for a surety bond. As a necessary part of that application, appellant Shine individually, and appellant Olympic Development Group, Inc. (Olympic), by Shine as its president, executed an indemnity agreement (the Prichard Indemnity Agreement), promising to indemnify appellee should appellee suffer any loss from default by Prichard, the bond principal, in the payment of the bond premiums, performance of reclamation of the land, or from any other expenses that might arise pursuant to appellee's issuance of the bond. Appellants also executed a collateral security agreement whereby there was deposited with appellee a certificate of deposit (the Prichard Certificate of Deposit) to be held by appellee until it was released from all liability on the bond. On April 20, 1977, a surety bond (the Prichard Bond) was issued by appellee as surety in the amount of $38,000, assuring the performance of Prichard's obligations under Kentucky law in connection with the activities to be conducted upon the issuance of a mining permit. The bond was submitted to Kentucky in support of Prichard's permit application, and Prichard was eventually issued a mining permit.

During the summer of 1978, Kentucky issued to Prichard several notices of violation in the reclamation of the permitted area. Following unsuccessful negotiations with Prichard, Kentucky filed a complaint against the company, seeking forfeiture of the Prichard Bond. Sometime during the spring of 1980, another coal mining company, Chatsworth Coal Company (Chatsworth) attempted to take over the mining permit held by Prichard. In order to issue the permit sought by Chatsworth, Kentucky required of Chatsworth a surety bond in addition to the Prichard Bond already in place. Accordingly, Chatsworth executed appellee's combined application for surety bond and general agreement of indemnity, as well as a collateral security agreement. The collateral for this indemnity agreement was a certificate of deposit in the amount of $12,768 (the First Chatsworth Certificate of Deposit). On March 24, 1980, a surety bond was issued in the amount of $21,280 by appellee as surety, naming Chatsworth as principal (the First Chatsworth Bond). Chatsworth submitted an application in Prichard's name for a permit to mine the area already permitted to Prichard. Appellee contacted appellant Shine concerning Chats-

worth's proposal to assume responsibility under the Prichard permit and its issuance of the First Chatsworth Bond.

Subsequently, Kentucky rejected Chatsworth's application in the name of Prichard. By letter dated March 31, 1980, Kentucky notified Chatsworth that its application would have to be in its own name instead of that of Prichard. Due to Kentucky's rejection of this application, the First Chatsworth Bond was returned to Chatsworth and never became effective.

Apparently, around April 1, 1980, appellee executed an endorsement which sought to change the identity of the principal of the Prichard Bond from Prichard to Chatsworth Coal. However, there is no evidence that the endorsement was ever submitted to Kentucky in conjunction with the first Chatsworth permit application. In fact, the evidence shows that the first Chatsworth permit application had been rejected before the endorsement was executed. Moreover, Ms. Keller of the Kentucky National Resources and Environmental Protection Cabinet, whose duties included overseeing the Prichard permit application, stated in her deposition that at all times the principal of the "Prichard Bond" remained Prichard, and the identity of the bond principal was never transferred.

In an attempt to comply with Kentucky's permit application requirement and to avoid forfeiture of the Prichard Bond held by Kentucky, an agent of appellee telephoned appellant Shine on April 28, 1980, and told him that appellee was issuing a new bond to Chatsworth and that the old collateral, the Prichard Certificate of Deposit, would be used. Appellants agreed to this arrangement. A letter sent on behalf of appellee to appellant Shine confirming the telephone conversation read as follows:

"Re: Prichard Mining[.] Chatsworth Coal Co.[.] Dear Mr. Shine: This will confirm our telephone conversation of April 28, 1980 wherein we discussed the bonding on the above companies and agreed and consented to the following. The old bond #16238 [the Prichard Bond] . . . is being replaced by a new bond for Chatsworth Coal Corp. in an increased amount of $59,000.00. The increased portion ($21,000.) is being collateralized by Chatsworth Coal Corp. This is being done to avoid bond forfeiture and the loss of collateral currently being on deposit. . . . I have enclosed a supplemental collateral receipt to conform with the bond. Please sign the bottom and return to us in the envelope provided. *As soon as the permit is released, [appellee] will be able to release [appellant] Olympic Development's collateral back to you. . . .*" (Emphasis supplied.)

As agreed, appellants signed a second collateral security agreement (Second Collateral Agreement), wherein the Prichard Certificate of Deposit was to be held "in accordance with the original collateral receipt and agreement." On the same date, appellee issued a bond in

the amount of $59,280, naming Chatsworth as principal (the Second Chatsworth Bond), and Chatsworth filed a new application for a mining permit.

Subsequently, Chatsworth's second application for a mining permit was withdrawn because Chatsworth was unable to obtain a necessary waiver from a dwelling owner. The Second Chatsworth Bond and application were returned to Chatsworth. The Second Chatsworth Bond never had any legal effect. In fact, neither of the two Chatsworth Bonds issued by appellee had any effect, because the bonds were provided to assure the performance of mining permits which were never issued.

The Prichard Bond, however, remained in full force and effect until the forfeiture of that bond became final on February 29, 1984. It is the Prichard Indemnity Agreement which appellee successfully sought to have enforced by the trial court.

Appellants first assert that the trial court erred in granting appellee's second motion for partial summary judgment, contending that a question of fact remained for jury resolution as to whether they were released from any and all liability as indemnitors of the Prichard Indemnity Agreement. Appellants specifically pled the affirmative defense of release. See OCGA § 9-11-8 (c); *Young v. Jones*, 149 Ga. App. 819, 822 (256 SE2d 58) (1979). "Appellee, as moving party for summary judgment, had the burden of piercing appellant's affirmative defense. [Cits.]" *Peppers v. Siefferman*, 153 Ga. App. 206, 207 (265 SE2d 26) (1980). Appellee's burden will have been met only if the evidence establishes, as a matter of law, that appellants' defense of release was not a bar to recovery. See generally *Peppers v. Siefferman*, supra at 207; *Atlanta Cutlery Corp. v. Queen Cutlery Co.*, 168 Ga. App. 584, 585 (309 SE2d 691) (1983).

Appellants' contention that they were released from their obligations under the Prichard Indemnity Agreement is based only upon the above-quoted letter to appellant Shine. That letter agreement merely evidences an agreement between the parties to transfer the Prichard Certificate of Deposit, which was being held as security for the Prichard Bond, to the Second Chatsworth Bond. This transfer was obviously effectuated in the mutual best interest of the parties, which interest was "to avoid bond forfeiture and the loss of collateral currently being on deposit" in connection with the Prichard permit application. Insofar as the language in the letter referring to a "release" is concerned, that language clearly provides that as soon as "the permit is released, [appellee] will be able to release [appellant] Olympic Development's *collateral* back to you." (Emphasis supplied.) It is apparently undisputed that the permit referred to is the Chatsworth permit. Thus, the alleged release refers *only* to a release of appellants' *collateral*, the Prichard Certificate of Deposit; it does *not*

refer to any release of appellants' *liability* under the Prichard Indemnity Agreement.

Construction of a contract is a question of law for the court. OCGA § 13-2-1. "Where a contract is unambiguous it must be construed to mean what it says. [Cits.]" *Fox v. Southern Glassine Co.*, 130 Ga. App. 124 (202 SE2d 563) (1973). "Interpretation of a contract becomes a question for the jury only if the contract is ambiguous and if the ambiguity remains after the application of the rules of construction. [Cit.] In construing a contract, the intention of the parties must be ascertained. 'If that intention is clear and it contravenes no rule of law, and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.' [Cit.] We find no ambiguity in the [letter agreement] as to [appellants'] liability." *Saf-T-Green of Atlanta v. Lazenby Sprinkler Co.*, 169 Ga. App. 249, 250 (312 SE2d 163) (1983). The clear intention of the parties was to transfer the collateral and "release" that collateral to appellants upon the "release" of the Chatsworth permit. The parties did not intend a release of appellants' obligations under the Prichard Indemnity Agreement. Based upon the foregoing, we find that appellants' defense of release was pierced by the evidence of record.

To the extent that appellants additionally raise the defenses of accord and satisfaction and novation, we find that these defenses were likewise pierced. Appellants again contend that the letter agreement constituted the sole evidence of the alleged accord and satisfaction or novation. However, the letter agreement shows that the parties did not intend to substitute the letter agreement for the Prichard Indemnity Agreement. See generally OCGA §§ 13-4-101; 13-4-5; *Fagala v. Morrison*, 146 Ga. App. 377-378 (246 SE2d 408) (1978). Compare *Jones v. Fed. Deposit Ins. Corp.*, 151 Ga. App. 619, 620 (2) (260 SE2d 751) (1979).

The trial court did not err in granting partial summary judgment in favor of appellee for reasons asserted by appellants.

3. Appellants also contend that because appellee executed an endorsement changing the principal of the Prichard Bond from Prichard to Chatsworth, this constitutes an intentional alteration of the indemnity agreement in material part, and, that under OCGA § 13-4-1, they therefore have the option to consider the contract to be void. However, under OCGA § 13-4-1, in order for the contract to be voidable because of an intentional and material alteration, it must be shown that the alterations were made with the intent to defraud the other party. Appellants do not contend that the alteration of the principal of the Prichard Bond was done with an intent to defraud them, nor do we find any evidence in the record of any such intention. The evidence that such was not the intention is therefore undisputed. Ac-

cordingly, appellants were not entitled to exercise their option to consider the Prichard Indemnity Agreement void under OCGA § 13-4-1. See *Smith v. Ga. Battery Co.*, 46 Ga. App. 840 (1) (169 SE 381) (1933).

Moreover, the evidence shows that the change of the principal of the Prichard Bond through endorsement was never submitted to Kentucky. The endorsement was allegedly executed on April 1, 1980. This was subsequent to Kentucky's denial of the first Chatsworth permit application, and therefore, the altered Prichard Bond was not submitted to Kentucky in conjunction with that permit application. Thereafter, the Prichard Bond was *replaced* by a new bond in an increased amount of $59,000 which named Chatsworth as principal. It was this Second Chatsworth Bond which was submitted in conjunction with the second Chatsworth application. Therefore, it appears that the endorsement to alter the Prichard Bond was never submitted to Kentucky. Furthermore, as previously stated, the bonds which were submitted in support of subsequently *denied* mining permits never had any legal effect. Therefore, even if the altered Prichard Bond was submitted to Kentucky in support of the first or second Chatsworth application, the bond had absolutely no force or effect because neither permit was issued. The endorsement actually changed nothing, and there was not a "material" alteration within the meaning of the code section. See generally *Price v. Mitchell*, 154 Ga. App. 523, 525 (2) (268 SE2d 743) (1980).

Accordingly, we find that the trial court did not err in failing to submit the issues of appellants' release and discharge to the jury.

*Judgment entered on October 19, 1984, affirmed. Appeal from order dated May 22, 1984, dismissed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED MAY 30, 1985 —
REHEARING DENIED JULY 11, 1985 — ▮▮▮▮▮▮▮▮▮

*Wayne F. Carmichael*, for appellants.
*Douglas N. Campbell, Laura S. Conrad*, for appellee.